UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JIMMY HOWELL,

       Plaintiff,

vs.                                 Case No.  3:06-cv-438-J-MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

       Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on March 9, 2002 (Tr. 28), alleging an inability to work since December 19, 2000 (Tr. 60-63), which he subsequently amended to September 30, 2001.  (Tr. 431).  The Social Security Administration ("SSA") denied this application initially and upon reconsideration.  (Tr. 28, 51, 55).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on March 31, 2005.  (Tr. 15, 58).  On June 21, 2005, the ALJ issued a decision finding Plaintiff not disabled.  (Tr. 28-36).  Plaintiff subsequently filed a Request

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 8).

1

for Review by the Appeals Council (Tr. 10), but the Appeals Council denied the request on

April 18, 2006.  (Tr. 6-8).  Accordingly, the ALJ's June 21, 2005 decision is the final decision

of the Commissioner.  Plaintiff timely filed his Complaint in the United States District Court

on May 15, 2006.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since September 30, 2001 due to neck, back, and left

knee injuries.  (Tr. 29).

### B.    Summary of Evidence Before the ALJ

On the date the ALJ's decision was issued, Plaintiff was forty-five years of age with a

tenth grade education and past relevant work experience as a construction mechanic.  Id.

Plaintiff's medical history is discussed infra.  By way of summary, the medical records

submitted reveal that in July 1999, Plaintiff suffered an on-the-job injury in which he hurt his

knee, back, and neck.  Id.  Plaintiff was diagnosed with a lumbosacral disc injury and a

possible right sacroiliac injury and, subsequently, participated in physical therapy in

November 2000.  Id.  Plaintiff underwent left medical meniscectomy and lateral

meniscectomy in December 2000.  (Tr. 30).  Plaintiff took medications and underwent intra

discal injections.  (Tr. 369-70).  In March 2001, Plaintiff also reported stress and anxiety

attacks.  (Tr. 370).  In June 2001, Plaintiff reported panic attacks, anxiety, and depression.

(Tr. 371).  Plaintiff was diagnosed with major depression secondary to multiple injuries for

which he took medications, and was prescribed psychological treatment.  Id.

## 1.  **Plaintiff's Physical Impairments**

Since Plaintiff's only argument on appeal is that the ALJ failed to address relevant medical evidence pertaining to Plaintiff's mental impairments, Plaintiff's physical impairments are not discussed by the Court.

## 2.  **Plaintiff's Mental Impairments**

During an office visit on March 5, 2001, Plaintiff complained to Dr. Arnold Graham-Smith of panic attacks that occurred while he was driving.  (Tr. 165).  During a follow-up visit on June 1, 2001, Dr. Graham-Smith noted Plaintiff was "chronically-depressed" and his panic attacks had to be "pursue[d]."  (Tr. 162).  Plaintiff's panic attacks were also diagnosed by Dr. Ellen C. Sackett on May 17, 2001 when she prescribed him Zoloft.  (Tr. 187-88).

On a referral for psychological assessment by Dr. Arnold Graham-Smith because of complaints of panic attacks, anxiety, and depression, Dr. John Moreland completed an initial evaluation of Plaintiff and reported he had poor memory, probable borderline intelligence, but no evidence of delusions or hallucinations.  (Tr. 156).  Dr. Moreland's assessment revealed Plaintiff "has found it very difficult to cope with being disabled," he "can neither read or write," he has "trouble both falling and staying asleep," and he is "too frequently irritable and angry, becoming easily frustrated."  (Tr. 156-57).  In addition, Plaintiff's "scores on the Minnesota Multiphasic Personality Inventory (MMPI-2) revealed a significant amount of psychological distress."  (Tr. 157).  As a result, Dr. Moreland diagnosed Plaintiff with the following: major depression secondary to multiple physical injuries; pain disorder associated with both physical and psychological factors; and psychological stresses (vocational ambiguity, pain, loss of activities to do with family, depending upon children to take over

3

responsibilities).  Id.  Dr. Moreland assigned Plaintiff a GAF of 50.[2]  Another examination of

Plaintiff by Dr. Moreland in August 2001 revealed Plaintiff had "limited intellectual skills" and

the doctor's skepticism of Plaintiff's ability to "return to work potential."  (Tr. 160).

Plaintiff was also examined by Dr. Lauren Lucas on July 22, 2002 who diagnosed

him with the following: panic disorder with agoraphobia, pain disorder with psychological

and medical features, and probable borderline intellect or mild mental retardation.  (Tr. 281).

Dr. Lucas found Plaintiff's insight, judgment, and responses to logical and judgment

questions poor.  Id.  The doctor noted Plaintiff was not "psychologically competent to

manage his own benefits" and "would likely benefit from appropriate mental health

treatment."  (Tr. 282).  A subsequent examination on June 24, 2003 confirmed the earlier

diagnoses: pain disorder with psychological and medical feature, dysthymic disorder, and

probable mild mental retardation.  (Tr. 278).  Dr. Lucas noted Plaintiff "may benefit from the

services of a guardian."  Id.  In addition, on the functional limitations assessment/activities of

daily living, Dr. Lucas noted Plaintiff "reports no work contribution"; on the social functioning

factor, Plaintiff's only socializing included close members of his family; in terms of his

concentration, persistence, and pace, the doctor reported Plaintiff "attends adequately

during interview and mental status testing"; and in regards to deterioration in work-like

settings, Plaintiff was "probably psychologically competent to perform a routine repetitive

---

[2] The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV ) at 32 (4th ed. 1994). A GAF score of 51-60 indicates moderate symptoms, or moderate difficulty in social or occupational functioning (e.g., few friends, conflicts with peers or co-workers). Id. at 32.  A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), OR serious impairment in social or occupational functioning (e.g., no friends, unable to keep a job). Id.

4

task and to appreciate the need for appropriate relations among co-workers and supervisors."  Id.

On August 19, 2002, another physician, Dr. Michael Zelenka, examined Plaintiff and completed a Psychiatric Review Technique form ("PRTF") and Mental Residual Functional Capacity Assessment ("MRFCA").  (Tr. 218-236A).  Dr. Zelenka diagnosed Plaintiff with the following: a learning disorder, a depressive disorder (dysthymia), a panic disorder with agoraphobia, pain disorder with psychological and physical factors, and anxiety.  Id.  Dr. Zelenka determined Plaintiff's mental impairments resulted in mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate deficiencies in concentration, persistence, or pace; and one or two episodes of decompensation, each of extended duration.  (Tr. 228).  Dr. Zelenka noted Plaintiff was overwhelmed and deconditioned, his affect was appropriate, his mood dysphoric, and he was frequently irritable, angry, and easily-frustrated.  (Tr. 230).  The MRFCA reflected evidence supporting a learning disability.  (Tr. 235).  Another examination, on August 27, 2003, showed a probable learning disability.  (Tr. 343).  At this time, however, Dr. Zelenka modified his PRT form to indicate that there were no episodes of decompensation.  (Tr. 352).

Plaintiff continued to suffer from mental impairments as shown by his visits to St. Vincent's Family Medicine Center.  On October 2, 2002, Plaintiff received a panic disorder treatment (Tr. 259) and on October 16, 2002, he was diagnosed with Post-Traumatic Stress Disorder with panic and social isolation.  (Tr. 258).  After his February 18, 2003 visit, Plaintiff continued taking Zoloft because his anxiety and panic attacks did not cease.  (Tr. 252-56).  His medical condition was also affirmed by Dr. Josefino P. Bargas who noted Plaintiff's history of anxiety, mood swings and depression in his June 4, 2003 report (Tr. 261-63), and

by Dr. Daria F. Marranzini who noted Plaintiff's anxiety in her September 10, 2003 report. (Tr. 334-41).

Another PRTF and MRFCA were completed by Dr. Val J. Bee on July 2, 2003 and July 3, 2003, respectively.  (Tr. 316, 330).  Dr. Bee diagnosed Plaintiff with the following: an organic disorder ("BFF vs. LD, provisional"); a depressive disorder (dysthymia) as evidenced by sleep disturbance, decreased energy, and difficulty concentrating or thinking; a pain disorder; and probable mental retardation.  (Tr. 316-28).   Dr. Bee determined Plaintiff's mental impairments resulted in mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate deficiencies in concentration, persistence, or pace; and no episodes of decompensation.  (Tr. 326).  Dr. Bee noted Plaintiff had mildly dysphoric mood, and although he was able to do simple mental calculations, his "responses to reasoning questions were variable to poor."  (Tr. 328).  The doctor noted Plaintiff's past work history supports the conclusion that a learning disability or borderline intelligence are more likely diagnoses than a diagnosis of mental retardation.  (Tr. 328-29).  The MRFCA showed Plaintiff was moderately-limited in his ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically-based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and to set realistic goals or make plans independently of others.  (Tr. 330-33).  Although the doctor noted Plaintiff's "depression and pain may cause lapses in concentration and efficiency," he nevertheless concluded that Plaintiff "appears able to meet the mental demands of simple, well structured task activity."  (Tr. 332).  Finally, Plaintiff's mental impairments were treated with medications such as Zoloft, which he took

6

for his depression, anxiety, and panic attacks, and Amitriptyline.  (Tr. 362, 392-94).

### C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in a substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the non-disability requirements of the Act and was insured for benefits through the date of the decision.  (Tr. 29).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date, September 30, 2001.  Id.  At steps two and three, the ALJ held:

7

> The medical evidence indicates that the claimant has degenerative disc disease, degenerative joint disease, bilateral carpal tunnel syndrome, restless leg syndrome, and a history of left knee meniscetomies with residual knee pain, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination [] one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

(Tr. 32).

The ALJ further determined Plaintiff retained the residual functional capacity ("RFC") to perform "light work activity, which involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds as well as a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  (Tr. 33).  The ALJ determined Plaintiff's "depression and mild mental retardation have imposed only mild limitations" given his "only very limited treatment for depression" and failure to seek "the services of a mental health specialist/counselor"; therefore, the ALJ did not adopt any functional limitations as a result of his mental impairments.  (Tr. 32).  In making his findings regarding Plaintiff's RFC, the ALJ found Plaintiff's testimony concerning his impairments and their impact on his ability to work "to be less than credible in light of the fact that none of his treating physicians has declared him unfit to work."  (Tr. 31).

At step four, the ALJ determined Plaintiff did not retain the ability to perform any of his past relevant work.  (Tr. 35).  At step five, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act based on his exertional capacity for light work and his age, education, and work experience.  Id.

8

III.    **ANALYSIS**

A.    <u>**The Standard of Review**</u>

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson</u>, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  <u>Foote</u>, 67 F.3d at 1560.  <u>Accord</u> <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (explaining a court must scrutinize the entire record to determine reasonableness of factual findings).

B.    <u>**Issue on Appeal**</u>

Plaintiff argues one issue on appeal: whether the ALJ properly considered the medical evidence regarding Plaintiff's mental impairments.  (Doc. 11, p. 1).  Plaintiff argues

the ALJ erred by failing to address relevant medical evidence regarding his depression, anxiety, and panic attacks, specifically the reports of Dr. Moreland, Dr. Sackett, St. Vincent's Family Medicine Center, and Plaintiff's medication list. Id. at 6, 8-13. Plaintiff asserts the error was not harmless because the evidence directly contradicts the ALJ's ultimate finding that Plaintiff's mental impairments were not severe. Id. at 8.

After an independent review of the medical records, the Court finds the ALJ erred by failing to address relevant medical evidence. The ALJ is required to consider all of the evidence in the claimant's record when making a disability determination. See 20 C.F.R. §§404.1520(a), 416.920(a). In addition, the ALJ must state the weight afforded to the evidence considered. Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985). Specifically, the ALJ "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990). See also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (finding the ALJ "adequately articulated specific justification for discounting Dr. Pardo's opinion" by pointing out that the doctor's opinion was "deficient because it failed to account for Moore's diverse daily activities, or to give any specific assessment of Moore's functional capacity or explanation of how it bore on Dr. Pardo's conclusion that Moore could not work" and because the opinion was prepared on a short form used to support Moore's food stamp eligibility"). Indeed, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quoting Stawls v.

10

Califano, 596 F.2d 1209, 1213 (4th Cir. 1979)).  Although the ALJ is required to consider all of the evidence, he is not required to discuss all of the evidence presented, but rather must explain why "significant probative evidence has been rejected."  Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Simply stating that he considered reports from all treating physicians is not enough.  Ryan, 762 F.2d at 942 (finding the ALJ's statement that he "carefully considered all of the testimony at the hearing, the arguments made, and the documents described in the List of Exhibits" is not enough to establish what legal standards were applied or the weight accorded to the evidence (citing Cowart, 662 F.2d at 735)).  See also Cook v. Barnhart, 347 F. Supp. 2d 1125, 1132 (M.D. Ala. 2004) (criticizing the ALJ's failure to discuss the opinions of various medical providers, the court stated "[i]n the absence of specific mention by the ALJ of all of the factors, opinions, and circumstances that contributed to his findings, the court must conclude that the ALJ did not consider them").

In the instant case, the only report the ALJ specifically referenced in his decision regarding Plaintiff's mental impairments is that of Dr. Lucas.  (Tr. 32).  Although the ALJ was not required to discuss all of the evidence presented, the ALJ failed to state what weight he accorded the other medical evidence.  (Tr. 28-36).  By referring simply to the "medical evidence" and the "medical record" (Tr. 32), the ALJ created the presumption that he did not consider all the relevant evidence because the ALJ's decision does not sufficiently reveal whether specific evidence was considered and the weight it was given. Assuming the ALJ rejected the reports from the other physicians, he was required to at least explain his reasoning for rejecting them.

One indication that the ALJ failed to consider all the relevant evidence is the ALJ's conclusion that the medical records fail to establish Plaintiff had been treated for or diagnosed with a panic disorder. (Tr. 32). The record indicates Plaintiff began complaining of panic attacks as early as March 2001. (Tr. 165). Moreover, Dr. Graham-Smith, who was treating Plaintiff at that time, specifically mentioned in his report that Plaintiff's panic attacks had to be "pursue[d]" (Tr. 162) and these attacks were one of the reasons why Dr. Graham-Smith referred Plaintiff to Dr. Moreland. (Tr. 156). Subsequently, Plaintiff was diagnosed with panic attacks by Dr. Sackett in May 2001 (Tr. 187-88), by Dr. Zelenka in August 2002 (Tr. 218-236A), and even by Dr. Lucas in July 2002. (Tr. 281). The fact that the attacks did not stop is evidenced by Plaintiff's panic disorder treatment at St. Vincent's Family Medicine Center in October 2002  (Tr. 259) and by his continued taking of Zoloft in 2003. (Tr. 252-56). Neither Dr. Moreland's report nor the records of Dr. Sackett and St. Vincent's Family Medicine Center were mentioned by the ALJ in his decision. (Tr. 28-36). Although the Commissioner argues that the reports from Dr. Moreland and Dr. Sackett "predate Plaintiff's alleged disability onset date of September 30, 2001" and are thus  "of marginal relevance to Plaintiff's claim" (Doc. 12, p. 8), the ALJ was required to explain why these reports were not given any weight, if he chose to disregard them.

A second indication of the ALJ's failure to consider all the relevant medical evidence is the ALJ's failure to even mention Plaintiff's other mental impairment, namely, his anxiety. (Tr. 28-36). Plaintiff's anxiety, like his panic attacks, was one of the reasons for Dr. Graham-Smith's referral of Plaintiff to Dr. Moreland in June 2001. (Tr. 156). Later, in August 2002, Dr. Zelenka also diagnosed Plaintiff with anxiety, among other things. (Tr. 218-236A). Plaintiff's anxiety was also noted by Dr. Bargas in June 2003 (Tr. 261-63) and

by Dr. Marranzini in September 2003. (Tr. 334-41). Plaintiff took medications for his anxiety at least through 2003. (Tr. 252-56). The instant case is analogous to <u>Cook</u> where the record was also "devoid of evidence that the ALJ analyzed and considered Cook's anxiety disorder, carpal tunnel syndrome, and depression." <u>Cook</u>, 347 F. Supp. 2d at 1133. For this reason, the court in <u>Cook</u> found remand was necessary. <u>Id.</u>

Finally, the ALJ erred by failing to consider the reports of Dr. Zelenka and Dr. Bee as they refer to Plaintiff's limitations with regard to his concentration, persistence, or pace. (Tr. 28-36). Although the ALJ was free to decide to give greater weight to Dr. Lucas's report, he could not do so without explaining the weight he gave to the records of these two physicians. In <u>Moore</u>, the court explained the Commissioner's regulations provide a "mode of analysis" for considering mental impairments and "require the ALJ to use the 'special technique' dictated by the PRTF for evaluating mental impairments." <u>Moore</u>, 405 F.3d at 1213. "This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: 'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.' . . . The ALJ is required to incorporate the results of this technique into the findings and conclusions." <u>Id.</u> at 1213-14. In the instant case, while Dr. Lucas classified Plaintiff's limitations with regard to his concentration, persistence, or pace as mild ("The patient attends adequately during interview and mental status testing." (Tr. 278)), the reports of both Dr. Zelenka and Dr. Bee conclude that Plaintiff's limitations in this regard are "moderate." (Tr. 228, 326). On remand, the ALJ should at least mention which medical evidence is given more weight given the slight difference of opinion of the physicians.

13

Because the Court cannot discern from the ALJ's decision whether the ALJ rejected the opinions of the above-mentioned physicians or simply failed to consider them, the ALJ committed an error. Accordingly, upon remand, after the ALJ reviews the medical records as a whole, he is directed to consider whether Plaintiff's anxiety and panic disorder are severe impairments.  The Court expresses no view as to what evidence the ALJ should accept or reject, however, the ALJ should fully articulate his reasons for rejecting any significant probative evidence.

As the Court is remanding this case for further proceedings, the ALJ is also directed to address Plaintiff's mental retardation which was raised by the Commissioner (Doc. 12, p. 9) and acknowledged by the ALJ.  (Tr. 32).  The ALJ noted Plaintiff was diagnosed with "possible mild mental retardation" and briefly mentioned Dr. Lucas's report without making any findings as to that issue.  (Tr. 32).  On remand, the ALJ shall examine and explicitly determine whether Plaintiff meets or equals the criteria for disability under Listing 12.05C in Pt. 404, Subpt. P, App. 1 of 20 C.F.R.  The ALJ is free to conduct any further proceedings or order any further testing necessary to make this determination.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  On remand, the ALJ shall (1) consider the PRT forms prepared by Dr. Zelenka and Dr. Bee on August 19, 2002 and July 2, 2003 respectively, that Plaintiff's limitations with regard to his concentration, persistence, or pace were moderate; (2) articulate specific and adequate reasons for rejecting any significant probative evidence; (3) examine and explicitly determine whether Plaintiff meets or equals the criteria for disability under Listing 12.05C in Pt. 404, Subpt. P, App. 1 of 20

14

C.F.R.; and (4) conduct any other proceedings deemed appropriate.   The Clerk of the Court

is directed to enter judgment consistent with this opinion and, thereafter, to close the file.


**DONE AND ORDERED** at Jacksonville, Florida, this __12th__ day of February, 2007.



*Monte C. Richardson*
_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

15